UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| |
|---|
| DIANA MAY<br><br>          Plaintiff,<br><br>     v.<br><br>THE BOROUGH OF PINE HILL, et<br>al.<br><br>          Defendants. |

HONORABLE JOSEPH E. IRENES

CIVIL ACTION NO. 10-2628
(JEI/KMW)

**OPINION**

**APPEARANCES:**

KLINEBURGER & NUSSEY
Richard F. Klineburger, III
38 North Haddon Avenue
Haddonfield, NJ 08033
     Counsel for Plaintiff

BROWN & CONNERY, LLP
Christine P. O'Hearn
360 Haddon Avenue
P.O. Box 539
Westmont, NJ 08108
     Counsel for Defendants

**IRENES**, Senior District Judge:

This action arises out of Plaintiff Diana May's allegations
of sexual harassment and retaliatory dismissal. Presently before
the Court are Defendants' Motions for Summary Judgment and
Sanctions, which request the Court to strike certain evidence
from the record on summary judgment.


**I.**

1

In 1992, Ms. May was appointed tax collector for Pine Hill after obtaining her tax collector certificate from the State of New Jersey. (Pl.'s Facts ¶ 4)[1] Upon her reappointment, Ms. May received tenure. (*Id.* at ¶ 5) New Jersey law provides substantial job security to tenured tax collectors. *See* N.J.S.A. 40A:9-145.8 (requiring a hearing demonstrating good cause to remove a tax collector).

In 2006, Ms. May claims that John Kearney, the Pine Hill Solicitor, was involved in a suspicious land sale involving a foreclosed property in 2006. (*Id.* at ¶ 159) Plaintiff only perfunctorily addresses the sale in her Statement of Disputed Facts, though the sale forms the only basis for Plaintiff's claim against Kearney.

The following facts form the basis for Plaintiff's claims against Mayor Fred Constantino and the Borough of Pine Hill. In 2007, Mayor Constantino began to sexually harass Ms. May. (*Id.* at ¶ 76) It began with compliments of Ms. May's appearance laced with sexual innuendo. (*Id.* at ¶¶ 79-80) These comments caused Ms. May - a married woman with two children - to feel uncomfortable, embarrassed and ashamed. (*Id.* at ¶¶ 80-81) On more than one occasion, Mayor Constantino inappropriately touched Ms. May's leg and the area around her chest. (*Id.* at ¶¶ 93-94) Once, Mayor

---

[1] Citations to facts refer to the parties' obligation to submit statements of material facts pursuant to L.Civ.R. 56.1(a).

Constantino raised his hand to Ms. May's face and said that she was so cute he wanted to "smack her" in front of Deidre Besnick, a payroll employee.[2] (*Id.* at ¶ 97) To deflect these unwanted encounters, Ms. May began to dress more conservatively, though Mayor Constantino's behavior continued. (*Id.* at ¶¶ 82-86)

In the afternoons, when Mayor Constantino knew that Ms. May was alone in the office, the harassment became more aggressive. He would visit Ms. May's office, sit directly adjacent to her, make inappropriate comments, and stare at her breasts. (*Id.* at ¶¶ 104-07) Mayor Constantino would invite Ms. May to drink with him in his son's win cellar. (*Id.* at ¶ 90) While alone in Ms. May's office, Mayor Constantino would ask whether Ms. May liked her job and wanted to keep it. (*Id.* at ¶¶ 104-05) Mayor Constantino's behavior required Ms. May to begin taking the prescription medication Zoloft for anxiety. (*Id.* at ¶ 117)

Ms. May never complained of the alleged sexual harassment because Ms. May believed that Pine Hill's sexual harassment policy required complaints to be forwarded to Pine Hill's Administrator. (*Id.* at ¶¶ 113-14) Mayor Constantino served as Pine Hill's Administrator. (*Id.*)

---

[2] Defendant filed a Motion for Sanctions due to Plaintiff citing and attaching an interview with Besnick Plaintiff previously withheld in discovery under the work product doctrine. Plaintiff argues that attaching the interview was an inadvertent oversight and continues to assert the work product privilege. Because Plaintiff also supports Paragraph 97 by citing to May's deposition and Besnick's testimony at an administrative hearing on July 19, 2010, the Court may consider this fact for summary judgment purposes. *See infra* Part II.

3

Some time before January of 2009, Mayor Constantino hired Dawn Gordon to work part-time in both the Borough Clerk's Office and the Tax Office with Ms. May. (*Id.* at ¶¶ 121-122, 128) Before being hired, Mayor Constantino and Ms. Gordon knew each other through Ms. Gordon's husband, one of only two paid firefighters for Pine Hill. (*Id.* at ¶ 125)

In January or February of 2009, Ms. May discovered that Ms. Gordon had misappropriated tax funds. (*Id.* at ¶ 128) Ms. Gordon took sick leave for two weeks upon Ms. May confronting Ms. Gordon about the missing funds. (*Id.* at ¶ 129) When Ms. Gordon returned to work, she produced the missing $1,600 to Ms. May. (*Id.* at ¶¶ 129-30)

Ms. May alleges that Ms. Gordon misappropriated funds a second time in March of 2009, but Ms. Gordon did not return the funds. (*Id.* at ¶¶ 131-32)

In April of 2009, Ms. May discovered that Ms. Gordon had misappropriated funds a third time. (*Id.* at ¶ 134) This time, Ms. May sent an email to both Mayor Constantino and CFO Tom Cardis. (*Id.* at ¶ 138) Ms. May and Mayor Constantino met several times regarding Ms. Gordon's misappropriation of tax funds. (*Id.* at ¶ 139)

In response to Ms. May's complaints, Mayor Constantino met with Ms. Gordon and Ms. Buchanan, the Borough Clerk. (*Id.* at ¶ 140) Mayor Constantino did not permit Ms. May to attend the

4

meeting. (*Id.* at ¶ 141) The only disciplinary action Mayor Constantino took, however, was to require Ms. Gordon to sign a copy of Ms. May's email. (*Id.* at ¶ 146)

Following this situation, Ms. May's work environment changed. (*Id.* at ¶ 156) For example, Mayor Constantino began to monitor and strictly enforce Ms. May's hour requirements. (*Id.* at ¶ 157) The Pine Hill Tax Collector's Office, however, operates independently of the Mayor's Office. (*Id.* at ¶ 6) Only the governing body of Pine Hill had the authority to regulate Ms. May's hours. *See* N.J.S.A. 40A:9-141. Ms. May nonetheless obeyed Mayor Constantino's demands for fear of losing her job.

On June 22, 2009, at Mayor Constantino's request, Internal Affairs opened an investigation into whether Ms. May had attended the continuing educations classes at the Spring 2009 conference.[3] (Def.'s Facts ¶ 23; Pl.'s Facts ¶¶ 33-35) Tax collectors are required to complete a certain number of continuing education hours to renew their licenses every two years. (Def.'s Facts ¶ 3) The Tax Collectors Treasurer Association of New Jersey ("TCTANJ") provides continuing education services and the New Jersey Department of Community Affairs, Division of Local Government Services ("NJDCA") relies upon TCTANJ's attendance records in

---

[3] Defendants assert that Pine Hill's Chief Financial Officer alerted Mayor Constantino that Ms. May was not present at the spring 2009 conference, which prompted Mayor Constantino to investigate. In contrast, Ms. May alleges that the investigation was a pretext to oust Ms. May for protected activity.

renewing licenses.  (*Id.* at ¶¶ 10-11) Pine Hill paid for Ms. May to attend these continuing education classes. (*Id*. at ¶ 19)

Although not initially the subject of the investigation, Lieutenant Winters discovered that TCTANJ recorded Ms. May as having attended only one class at the Spring 2008 conference when she should have attended several classes. (Def's Facts ¶ 41) Ms. May contends that the records mistakenly marked her absent because she failed to properly operate recently implemented computer scanning technology for attendance. (Pl.'s Facts ¶¶ 24-26) There is no evidence, however, that Ms. May took steps to rectify her error.

With respect to the initial reason for the investigation, the Spring 2009 conference, Winters discovered that Ms. May had not attended any classes. (Def.'s Facts ¶ 22) Ms. May concedes that she did not attend the conference, however, due to suffering symptoms from an episode of vertigo. (Pl.'s Facts at ¶¶ 13-15) Ms. May did not submit a request for reimbursement for the spring 2009 conference or certify that she attended those classes. (*Id.* at ¶ 22)

In June of 2009, Ms. May timely filed a certification under the six month grace period to renew her license that expired on December 31, 2008. (Def.'s Facts ¶ 49) In the certification, Ms. May affirmed that she attended six classes at the spring 2008 conference. (*Id.* at ¶ 43)

On August 10, 2009, the Pine Hill Council passed a resolution suspending Ms. May without pay for falsifying records on her certification renewal. (Pl.'s Facts at ¶¶ 48-49) Ms. May's termination resulted in her family losing their health benefits. (*Id.* at ¶ 57) The next day, on August 11, 2009, Ms. May was arrested at the direction of the Camden County Prosecutor's Office for the falsification of records. (*Id.* at ¶ 51) Mayor Constantino then circulated a memorandum to Pine Hill employees explaining that Ms. May would no longer have access to the Borough Offices. (*Id.* at ¶ 55) After Ms. May's arrest, Ms. Gordon was eventually suspended after being criminally charged for stealing money from the Tax Office. (*Id.* at ¶ 158)

The NJDCA did not suspend or revoke Ms. May's tax collector license for the supposed falsification of records. (*Id.* at ¶ 74) In fact, Ms. May recently renewed her license. (*Id.* at ¶ 75) As of June 2012, Ms. May had not yet been indicted, though an investigation is still alleged to be ongoing. (*Id.* at ¶¶ 61-63)

On July 9, 2010 and July 19, 2010, the Office of Administrative Law ("OAL") held hearings on Plaintiff's suspension. (*Id.* at ¶ 59) On May 1, 2012, the OAL ruled that the Borough had good cause to suspend Ms. May due to the pending criminal charges; however, the Borough improperly suspended Ms. May without a hearing and without pay. (Def.'s Ex. J at 16-17) "The Borough should have suspended her with pay until the

7

criminal charges were resolved or until she had the requisite hearing." (*Id.* at 17)

On May 21, 2010, Plaintiff removed to this Court. (Dkt. No. 1) By Opinion and Order dated December 17, 2010, this Court partially granted Defendants' Motion to Dismiss. (Dkt. Nos. 6-7) On April 16, 2012, Defendants' moved for summary judgment. (Dkt. No. 27) On June 11, 2012, Defendants filed a Motion for Sanctions. (Dkt. No. 34) The Court must first resolve the Motion for Sanctions in order to determine the facts upon which the Court may rely in resolving the Motion for Summary Judgment.

## II.

At issue in Defendants' Motion for Sanctions are two numbered paragraphs in Plaintiff's 174 Paragraph Statement of Disputed Material Facts. Paragraph 97 states:

> Mayor Constantino also once stated in front of the payroll clerk, that Ms. May was so cute that he 'wanted to smack her.' When he made the comment he raised his hand to Ms. May's face. Deidre Besnick, an employee in the payroll office, witnessed the comment and Mayor Constantino raising his hand to Ms. May.

Plaintiff supports this Paragraph by citing to Ms. May's deposition, a transcript of the OAL hearing before the Hon. Lisa James-Beavers on July 19, 2010 and Besnick's Interview conducted by a private investigator at Plaintiff's counsel's request. (Def.'s Cert. Summ. J. Ex. K at 252:9-13; Def.'s Cert. Summ. J. Ex. C at 104:5-15, 105:10-12; Pl.'s Cert. Summ. J. Ex. D)

Paragraph 98 provides "[a]fter Ms. Besnick heard the
comment, she told Mayor Constantino 'well go ahead because I just
witnessed harassment.'" Although Plaintiff supports this
Paragraph only by reference to the Besnick Interview (Pl.'s Cert.
Summ. J. Ex. D at 3), Plaintiff argues that Ms. Besnick testified
similarly at the July 19, 2010 administrative hearing. (Def.'s
Cert. Summ. J. Ex. C at 104:12-13 ("I was shocked and I said to
him, 'Well, go ahead, because you know you got a witness standing
right here.'"))

Defendants argue that Plaintiff inappropriately supported
these Paragraphs by citing to the Besnick Interview, which
Plaintiff refused to provide in discovery by relying on the work
product privilege. For this alleged discovery violation,
Defendants request the Court to (a) strike the interview from
Plaintiff's Opposition to Summary Judgment; (b) preclude the
interview from evidence at trial; (c) award attorneys' fees
incurred in preparing this Motion for Sanctions.[4]

In response, Plaintiff contends that an associate
inadvertently included the Besnick Interview as an exhibit.
Plaintiff, therefore, consents to striking all references to the
Besnick Interview in its Opposition to Summary Judgment and
reasserts the work product privilege. Defendants accept this

---

[4] Defendants have apparently withdrawn the request to bar Ms. Besnick's
testimony at trial in their Reply.

concession. Therefore, Defendants' first two requests for relief have been resolved. Nevertheless, while the Court will strike any reference to the Besnick Interview, the Court will still consider Paragraphs 97 and 98 because other evidence in the record supports them.

With respect to shifting attorneys' fees, Defendants move under Fed.R.Civ.P. 37(c)(1): "If a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless." Defendants argue that Plaintiff failed to supplement a disclosure pursuant to Fed.R.Civ.P. 26(e). But to fail to supplement a disclosure, Plaintiff would first be required to make a disclosure - an issue Defendants do not address.

"Unless otherwise limited by court order, the scope of discovery is as follows: Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense..." Fed.R.Civ.P. 26(b)(1). Defendants do not argue that Plaintiff's assertion of privilege was improper. Nor do Defendants argue that Plaintiff waived privilege by submitting the Besnick Interview with its Opposition to Summary Judgment. Accordingly, the privileged Besnick Interview was outside the scope of Plaintiff's required disclosures. The Court denies

10

Defendants' motion with respect to attorneys' fees based on
Plaintiff's inadvertent use of a privileged document to support
contentions already established elsewhere in the record.

### III.

"[S]ummary judgment is proper 'if the pleadings,
depositions, answers to interrogatories, and admissions on file,
together with the affidavits, if any, show that there is no
genuine issue as to any material fact and that the moving party
is entitled to a judgment as a matter of law.'" *Celotex Corp. v.
Catrett*, 477 U.S. 317, 322 (1986) (quoting Fed.R.Civ.P. 56(c)).
In deciding a motion for summary judgment, the Court must
construe the facts and inferences in a light most favorable to
the non-moving party. *Pollock v. American Tel. & Tel. Long
Lines*, 794 F.2d 860, 864 (3d Cir. 1986).

"'With respect to an issue on which the non-moving party
bears the burden of proof, the burden on the moving party may be
discharged by 'showing' – that is, pointing out to the district
court – that there is an absence of evidence to support the
nonmoving party's case.'" *Conoshenti v. Public Serv. Elec. &
Gas*, 364 F.3d 135, 145-46 (3d Cir. 2004) (quoting *Celotex*, 477
U.S. at 323).  The role of the Court is not "to weigh the
evidence and determine the truth of the matter, but to determine
whether there is a genuine issue for trial." *Anderson v. Liberty*

11

*Lobby, Inc.*, 477 U.S. 242, 249 (1986).  "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment."  *Id*. at 249.

## IV.

Defendants move for summary judgment on Plaintiff's three remaining claims: (1) retaliation against all Defendants in violation of CEPA; (2) sexual harassment against Mayor Constantino under the New Jersey Law Against Discrimination ("LAD"); and (3) a violation of the Consolidated Omnibus Reconciliation Act ("COBRA").  *See* 29 U.S.C. § 1161, *et seq.*

## A.

CEPA provides that:

> An employer shall not take any retaliatory action against an employee because the employee [o]bjects to, or refuses to participate in any activity, policy or practice which the employee reasonably believes is in violation of a law ... is fraudulent or criminal ... or is incompatible with a clear mandate of public policy concerning the public health, safety or welfare or protection of the environment.

N.J.S.A. 34:19-3c.

The familiar burden shifting framework governs CEPA claims. First, Plaintiff must establish a prima facie case. *See Estate of Oliva v. New Jersey*, 579 F.Supp.2d 643, 684

(D.N.J.), *aff'd*, 604 F.3d 778 (3d Cir. 2010) (citing *Fleming v. Cirr. Healthcare Solutions, Inc.*, 164 N.J. 90, 100 (2000)). The burden then shifts to Defendants to establish a nondiscriminatory reason for the adverse employment action. *Id.* If successful, the burden shifts to Plaintiff to establish that the proffered explanation was merely a pretext. *Id.*

To establish a prima facie case, Plaintiff must establish: (1) a reasonable belief that her employer or coemployee's conduct violated a law, rule or regulation; (2) a whistle-blowing activity; (3) an adverse employment action; and (4) a causal connection between the protected activity and the adverse employment action. *Id.* (citing *Caver v. City of Trenton*, 420 F.3d 243, 254 (3d Cir. 2005).

First, Ms. May held a reasonable belief that Ms. Gordon misappropriated tax funds. Ms. May caught Ms. Gordon on three separate occasions, and Ms. Gordon returned the stolen funds once.

Second, Plaintiff met with and sent an email to Mayor Constantino regarding the misappropriated funds. Although Defendant notes that the email sent to Mayor Constantino never used the word "steal," a reasonable employer would have come to that conclusion. Ms. May wrote that Ms. Gordon collected tax payments "while I was out of the office ...

13

and never Deposited [them] within the 48 hour period and never applied [them] to each individual accounts [sic]. I am concerned that this is starting to cause bad internal controls for my office." (Def.'s Cert. Ex. Q) Mayor Constantino could reasonably interpret this email to diplomatically notify Mayor Constantino that the friend he hired, Ms. Gordon, was stealing taxpayer funds. Ms. May also testified that she notified Mayor Constantino of Ms. Gordon's misconduct at several meetings. Accordingly, Ms. May has established whistle-blowing activity under the second element.

Third, Defendants do not dispute that Ms. May suffered an adverse employment action.

Finally, Defendants argue that four months separated Ms. May's whistle-blowing activity and her discharge. This temporal gap suggests a lack of causation. Defendants then inaccurately state that "plaintiff candidly admitted she had no facts or evidence to support any causal connection."[5] (Def.'s Br. 10 (citing Statement of Facts, ¶¶ 80-87)) Defendant's distortion of Plaintiff's arguments and admissions notwithstanding, Plaintiff has submitted evidence

---

[5] This disingenuous proclamation inaccurately describes both Plaintiff's Response to Defendant's Statement of Facts and Plaintiff's Counter Statement of Material Facts. For example, Plaintiff's Response denies Defendants' Paragraph 80 and elaborates with examples of Mayor Constantino's retaliatory behavior.

to support a finding of causation. After Plaintiff reported
Ms. Gordon, Mayor Constantino's attitude towards Plaintiff
changed. He forced her to clock in and closely monitored her
lunch breaks, though he had no authority to do so. Although
Plaintiff was not fired until four months after Ms. May's
whistle-blowing activities, Mayor Constantino requested the
police to open an investigation some two months later. A
reasonable jury could find that Mayor Constantino, in an
effort to terminate Ms. May for her whistle-blowing
activity, abused his position to search for a legitimate
reason to terminate Ms. May.[6]

Accordingly, Ms. May has established a prima facie case
for retaliation under CEPA. The burden now shifts to
Defendants to present a valid nondiscriminatory reason for
the adverse employment actions. Defendants argue that
Plaintiff was fired for failing to attend six continuing
education classes at the spring 2008 conference. "Plaintiff
offered no evidence whatsoever to rebut the Borough's
evidence that she failed to attend the six (6) classes."
(Def.'s Br. 13) Again, Defendants grossly misrepresent
Plaintiff's position and the record.

Defendants' nondiscriminatory reason fails for several

---

[6] Although this inference, in part, collapses the burden shifting
framework by discussing pretext, Plaintiff's prima facie case relies on
pretext and is, therefore, properly discussed here.

15

reasons. First, Ms. May testified that she attended
continuing education classes in the Spring of 2008, but
failed to register her attendance by using the newly
implemented computer scanning equipment. (Pl.'s Facts ¶¶ 23-
32) The Court may not resolve any contradictory evidence in
Defendants' favor on a motion for summary judgment.

Second, according to the OAL Decision, Defendants
wrongfully terminated Plaintiff without pay. Defendants
instead should have suspended Plaintiff with pay pending the
outcome of the criminal charges or the statutorily required
removal hearing.

Third, the NJDCA evidently did not find the pending
criminal charges troubling as they renewed Ms. May's tax
collector license in 2010.

For the reasons above, Defendants have failed to
present a satisfactory nondiscriminatory reason for Ms.
May's termination. Nonetheless, assuming *arguendo* that
Defendants have met their burden, Plaintiff has proffered
evidence that establishes pretext. *See Fuentes v. Perskie*,
32 F.3d 759, 764 (3d Cir. 1994) (holding that pretext can be
shown by pointing to "weaknesses, implausibilities,
incoherencies, or contradictions in the employer's proffered
legitimate reasons for its action that a reasonable
factfinder *could* rationally find them unworthy of credence

16

...."). Mayor Constantino used Ms. May's supposed absence from continuing education classes in the Spring of 2008 as a pretext to fire her. As for the Spring 2009 classes, Ms. May conceded she was ill during the conference and reported that illness to payroll clerk Pat Hendricks. (Pl.'s Facts ¶ 16) As the OAL Court found, Mayor Constantino did not have the authority to terminate Ms. May without pay absent a hearing. With minimal effort, Mayor Constantino could have discovered the flimsy factual basis and wholly absent procedural basis for terminating Ms. May. Therefore, summary judgment must be denied as to Mayor Constantino and the Borough of Pine Hill.[7]

With respect to Kearney and the alleged suspicious foreclosure sale, Plaintiff has not established a prima facie case. First, Plaintiff has failed to establish that she reported her suspicions regarding the sale.

In addition, assuming that Plaintiff could establish the first three elements of a CEPA claim, Plaintiff has not shown that any whistle-blowing activity in 2006 caused her termination in August of 2009. *See Clark Cnty. Sch. Dist. v. Breeden*, 532 U.S. 268, 274 (2001) (holding in a Title VII claim for retaliation that "[a]ction taken (as here) 20

---

[7] Defendants make no argument that Mayor Constantino and the Borough of Pine Hill should be treated differently for the purposes of this Motion. In fact, Defendants make no argument specific to the Borough of Pine Hill at all.

17

months later suggests, by itself, no causality at all."). Here, the three year difference between the event and the adverse employment action is even more attenuated. Accordingly, Defendants' Motion with respect to Kearney will be granted on the CEPA claim.

### B.

Plaintiff asserts two theories of sexual harassment: (1) quid pro quo and (2) hostile work environment. Defendant moves for summary judgment under both theories.[8]

### 1.

To establish a claim, "the plaintiff must show that his or her response to unwelcome advances was subsequently used as a basis for a decision about compensation, etc." *Farrell v. Planters Lifesavers Co.*, 206 F.3d 271, 282 (3d Cir. 2000) (quoting *Robinson v. City of Pittsburgh,* 120 F.3d 1286, 1297 (3d Cir. 1997)*, abrogated on other grounds, Burlington Northern and Santa Fe Ry. Co. v. White*, 548 U.S. 53, 60 (2006). "While evidence of hostility or repeated demands for sexual favors would strengthen any plaintiff's case, the lack of such evidence does not render it fatally flawed." *Id.* Defendants argue that

---

[8] Although these claims also follow the burden shifting framework above, *cf. Farrell v. Planters Lifesavers Co.*, 206 F.3d 271, 282 (3d Cir. 2000), Defendants proffer no nondiscriminatory reasons.

Plaintiff has failed to demonstrate a causal connection between the unwanted advances and Ms. May's termination. The Court disagrees.

A reasonable jury could find that Mayor Constantino made many unwelcome advances towards Ms. May. After rejecting those advances, Mayor Constantino would ask Ms. May whether she liked or wanted to keep her job. (Pl.'s Facts ¶ 105) Ms. May testified that these were not isolated events, but happened constantly over the course of Ms. May's employment. While Defendants urge this Court to overlook these facts, it is the role of the jury, not the judge, to determine credibility. Accordingly, Defendants' Motion must be denied on Plaintiff's claim for quid pro quo sexual harassment.

## 2.

To establish a hostile work environment claim, Plaintiff must show that "the complained-of conduct (1) would not have occurred but for the employee's gender; and it was (2) severe or pervasive enough to make a (3) reasonable woman believe that (4) the conditions of employment are altered and the working environment is hostile or abusive." *Hughes v. Home Depot, Inc.*, 804 F.Supp.2d 223, 227 (D.N.J. 2011) (quoting *Lehmann v. Toys 'R' Us*, 132 N.J. 587, 603-04 (1993).

Defendants only argue that Plaintiff has failed to present

evidence that the sexual harassment "was so pervasive or severe that it would offend a reasonable woman." (Def.'s Br. 17) The argument is wholly without merit.

On at least two occasions Mayor Constantino inappropriately touched Ms. May. In an effort to avoid his lecherous comments and physical advances, Ms. May had to change clothes and avoid one-on-one interactions with Mayor Constantino. Suffering sexual harassment at the hands of Mayor Constantino was a burden several women bore at the office. A reasonable woman could find Mayor Constantino's pervasive unwelcome sexual advances as hostile and abusive. Accordingly, Defendants' Motion will be denied with respect to the hostile work environment claim.

### c.

Plaintiff's final claim is a violation of COBRA for failing to provide proper notice on how to continue her group benefits. Defendants argue that Plaintiff received notice in conformance with the provisions of COBRA. Plaintiff did not respond to Defendants' Motion in this regard.

Although a movant is not automatically entitled to summary judgment where the non-movant fails to respond, the Court may take all material facts with record support set forth by the moving party as true. *See Calderone v. Alliance Mortg. Co.*, 2011 WL 1640622 at *2 (D.N.J. Apr. 29, 2011).

COBRA requires employers to notify plan administrators of qualifying events such as suspension or termination within 30 days. 29 U.S.C. § 1166(a)(2). The plan administrator must notify the employee within 14 days. 29 U.S.C. § 2266(c).

Here, Plaintiff concedes she received proper notice and has not set forth any facts in her L.Civ.R. 56.1 Statement regarding her COBRA claim. There is simply no record support or argument to support Plaintiff's COBRA claim. Accordingly, the Court will grant Defendants' Motion.

## V.

For the foregoing reasons, Defendants' Motions will be granted in part and denied in part. Defendants' Motion for Sanctions will be denied. Defendants' Motion for Summary Judgment will be granted with respect to Plaintiff's claims for violations of CEPA against Kearney and COBRA against all Defendants. In all other respects, the Motion will be denied.

Date: 8/9/12

/s/ Joseph E. Irenas

**JOSEPH E. IRENAS, S.U.S.D.J.**