NOT FOR PUBLICATION

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY
CAMDEN VICINAGE

---

DIANA MAY,

      Plaintiff,

    v.

THE BOROUGH OF PINE HILL, et
al.,

      Defendants.

Civil No. 10-2628(KMW)

**OPINION**

---

Appearances:
Richard F. Klineburger, III, Esquire
Klineburger & Nussey
38 Haddon Avenue, Suite 100
Haddonfield, NJ 08033-2463
    Attorney for Plaintiff

Christine P. O'Hearn, Esquire
Brown & Connery, LLP
360 Haddon Avenue
P.O. Box 359
Westmont, NJ 08108
    Attorneys for Defendants

WILLIAMS, Magistrate Judge.

This matter comes before the Court on the Motion to Dismiss
filed by The Borough of Pine Hill, New Jersey ("Pine Hill"), The
Borough of Pine Hill Police Department ("PHPD"), (Former) Major
Fred Costantino ("Costantino"), and Police Chief Christopher
Winters ("Winters") (collectively, "Defendants") pursuant to
Federal Rule of Civil Procedure 12(b)(6) for Plaintiff's, Diana
May ("Plaintiff" or "May"), failure to state a claim upon which
relief can be granted.  Pursuant to Federal Rule of Civil Procedure

78, the Court has considered the submissions of the parties.  For the reasons set forth more fully below, the Court grants Defendants' Motion to Dismiss Counts IV, VI, VII, VIII, XII, XIII, XIV, XV and XVI.  Further, Counts I, II, III, V, IX, X, XI, XVII, and XVIII are dismissed without prejudice.

## I.   Background

## A.   Procedural History

On October 02, 2013, Plaintiff, Diana May, filed a Complaint against Pine Hill, PHPD, Costantino, and Winters ("2013 Complaint") in civil action number 13-cv-5861 ("2013 civil action") which was assigned to the Honorable Robert B. Kugler, U.S.D.J., and the Honorable Ann Marie Donio, U.S.M.J. [1]  Notably, at the time the 2013 Complaint was filed, Plaintiff already had a case pending in this Court, civil action number 10-2628 ("2010 civil action").[2]  The 2010 civil action was removed from the state court and the complaint ("2010 Complaint") named Defendant Fred Costantino, John Kearney and the Borough of Pine Hill.  On October 13, 2013, this Court was assigned to act as the magistrate judge in the 2013 civil action.  On November 8, 2013, Defendants filed their Motion to Dismiss the 2013 Complaint.  On November 12, 2013,

_____

[1] Plaintiff asserts the following claims: Section 1983 against Defendant Pine Hill Borough (Count I); Section 1983 against Defendant Fred Costantino (Count II); Section 1983 against Defendant Christopher Winters (Count III); Section 1983 against Defendant Pine Hill Police Department (Count IV); Section 1983 Failure to Train against Defendant Pine Hill Borough (Count V); Section 1983 Failure to Train against Defendant Pine Hill Police Department (Count VI); False Arrest against Defendant Christopher Winters (Count VII); False Imprisonment against Defendant Christopher Winters (Count VIII); Violation of New Jersey Civil Rights Act, N.J.S.A. 10:6-2 against Defendant Fred Costantino (Count IX); Violation of New Jersey Civil Rights Act, N.J.S.A. 10:6-2 against Defendant Christopher Winters (Count X); Violation of New Jersey Civil Rights Act, N.J.S.A. 10:6-2 against Defendant Pine Hill Police Department (Count XI); Negligence against Defendant Pine Hill Borough (Count XII); Negligence against Defendant Fred Costantino (Count XIII); Negligence against Defendant Pine Hill Police Department (XIV); Intentional Infliction of Emotional Distress against all Defendants (XV); Negligent Infliction of Emotional Distress against all Defendants (XVI); Civil Conspiracy against all Defendants (XVII); and Punitive Damages (Count XVIII).
[2] Defendants alerted the Court to the fact that the 2013 Complaint was filed. Defs.' Letter, Oct. 15, 2013, Civ. No. 13-5861, Doc. No. 4.

the 2013 civil action was reassigned from Judge Kugler to the
Honorable Joseph E. Irenas, S.U.S.D.J.  On November 27, 2013, Judge
Irenas signed an Order consolidating 2013 civil action into the
2010 civil action.   The 2010 civil action is the lead case.   On
December 23, 2013, Judge Irenas signed a "Notice, Consent, and
Reference of a Civil Action to a Magistrate Judge" form wherein
the parties agreed to proceed before this Court.  Same was filed
on December 26, 2013.

**B.   Factual Background**

Plaintiff's Complaint alleges the following relevant facts,
all of which are accepted as true for purpose of the instant Motion
to Dismiss.   In 1991, Plaintiff May was appointed as the Tax
Collector for Pine Hill.  2013 Compl. at ¶ 15, Doc. No. 1 in 2013
civil action.  Upon her appointment, May was an unclassified civil
servant with tenure which afforded her substantial security in her
employment.   *Id.*   Throughout her decades-long tenure, May has
remained current with her certification, despite a lack of
reimbursement by Pine Hill.   *Id.* at ¶ 31.   Her certification
remains current today.   *Id.*

On November 6, 2007, Mr. Costantino was elected to serve as
the Mayor of Pine Hill.   *Id.* at ¶ 16.   According to Plaintiff,
shortly thereafter, Costantino subjected her to repeated incidents
of sexual harassment.   *Id.* at ¶ 17.   Dawn Gordon was a personal
friend of Defendant Costantino who was working as a Deputy
Registrar for the Borough of Pine Hill.   *Id.* at ¶ 25.   May became
aware that Ms. Gordon had improperly handled and misappropriated
tax payments and informed Costantino of same.   *Id.* at ¶¶ 24-25.
Specifically, on at least three occasions, Borough tax payments to
Ms. Gordon went missing.   *Id.* at ¶ 24.

Plaintiff further alleges that Costantino directed Defendant
Winters, Lieutenant of the Pine Hill Police Department, to open a
criminal prosecution into her despite an absence of evidence
indicating she was engaged in criminal activity.   *Id.* at ¶¶ 13,
27.   Over the course of this investigation, Winters requested a

3

personal meeting with May but did not advise her that she was under investigation. *Id.* at ¶ 28.  During the meeting, Winters confined her to a room, intimidated her with threats, elicited a statement from her and failed to advise her of her *Miranda* rights. *Id.* at ¶¶ 29-30.

Additionally, Plaintiff asserts that on August 11, 2009, she was terminated from her position and became the subject of a criminal investigation. *Id*. at ¶¶ 13, 33.  At some point, the Defendants filed criminal charges against May. *Id.* at 32. Plaintiff avers that she was arrested and forced to post bail. *Id.* at ¶ 33.  The course of the investigation into May lasted approximately three years, and consisted of civil proceedings, administrative hearings, and a grand jury investigation. *Id.* at ¶¶ 33-34.  May alleges that these proceedings were conducted despite evidence of her innocence. *Id.* at ¶ 33.  On October 15, 2012, following the testimony of Winters, the Camden County Grand Jury declined to issue a True Bill, and the Camden County Prosecutor's Office declined to investigate the matter further. *Id.* at ¶ 34.  Subsequently, the proposed criminal charges against May were dropped. *Id.*

May alleges that over the course of the three years of investigations and proceedings, she became aware of the fact that over thirty percent (30%) of Pine Hill employees were under investigation by Winters for improper conduct. *Id.* at ¶ 35. However, personal friends of Costantino, among them Ms. Gordon, were not among those investigated. *Id.*  May also alleges that shortly after her termination, on September 29, 2009, Costantino falsely certified that he had ''no knowledge of any allegation of fraud or suspected fraud affecting the entity received in communications from employees, former employees . . .'' *Id.* at ¶ 36.  He made this certification despite the fact that May had advised him about Ms. Gordon. *Id.* at ¶¶ 25, 36.  Furthermore, Pine Hill failed to employ outside counsel or an independent third party to investigate May's allegations of sexual harassment, hostile work environment, and theft of monies. *Id.* at ¶ 37.

May alleges that the criminal allegations against her were

4

initiated by Defendants as a pretense for terminating her employment. *Id.* at ¶ 40. The Borough had already begun to interview a replacement for May prior to forcing her out of her office on August 11, 2009. *Id.* at ¶ 38.

## C.  Jurisdiction

This Court has jurisdiction under 28 U.S.C. §§ 1331 and 1343(3), as well as supplemental jurisdiction over the state-law claim under 28 U.S.C. § 1367.

## II.  Discussion

### A.  Standard of Review

Federal Rule of Civil Procedure 12(b)(6) permits a court to dismiss an action for failure to state a claim upon which relief can be granted. When evaluating a motion to dismiss, "'courts accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief.'" *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009) (quoting *Phillips v. County of Allegheny*, 515 F.3d 224, 233 (3d Cir. 2008)). Thus, "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)(quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

To make this determination, courts conduct a three-part analysis. *Santiago v. Warminster Twp.*, 629 F.3d 121, 130 (3d Cir. 2010). "First, the court must 'tak[e] note of the elements a plaintiff must plead to state a claim.'" *Id.* (quoting *Iqbal*, 556 U.S. at 675). "Second, the court should identify allegations that, 'because they are no more than conclusions, are not entitled to the assumption of truth.'" *Id.* at 131 (quoting *Iqbal*, 556 U.S. at 679). Last, "'where there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they

plausibly give rise to an entitlement for relief.'" *Id.* (quoting *Iqbal*, 556 U.S. at 679). This plausibility determination is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679. A complaint cannot survive where a court can only infer that a claim is merely possible rather than plausible. *Id.*

**B.   Analysis[3]**

**i.   Count I and V: *Monell* Claims against Defendant Pine Hill**

In cases arising under § 1983[4], municipalities cannot be held liable on a respondeat superior theory. *Monell v. New York City Dep't of Soc. Servs.*, 436 U.S. 658, 691 (1978). Instead, a municipality can only be liable "when the alleged constitutional transgression implements or executes a policy, regulation, or decision officially adopted by the governing body or informally adopted by custom." *McTernan v. City of York, Pa.*, 564 F.3d 636, 657 (3d Cir. 2009)(quoting *Beck v. City of Pittsburgh*, 89 F.3d 966, 971 (3d Cir. 1996)). Thus, there is a "'two-path track' to municipal liability, depending on whether a § 1983 claim is

---

[3] Plaintiff concedes that a Tort Claims Notice was not filed with the Borough and, as a result, does not contest Defendants' arguments with regard to Counts VII, VIII, XII, XIII, XIV and XV. Pl.'s Opp. Br. 2 fn.1. Further, Plaintiff concedes that she cannot bring separate claims against the PHPD, therefore, she does not contest Defendants' argument as to Counts IV, VI, and XIV. *Id.* Notably, Count XVI is a claim for negligent infliction of emotional distress which, based upon Plaintiff's concession, is also barred as Plaintiff was required to give notice of said claim pursuant to the Tort Claims Act. *Lassoff v. New Jersey*, 414 F. Supp. 2d 483, 489-90 (D.N.J. 2006)(Tort Claims Act applies to both intentional and non-intentional suits and a suit will be dismissed if a claimant fails to comply with the notice provisions of the Act). Based upon Plaintiff's concession and the finding of the Court, Counts IV, VI, VII, VIII, XII, XIII, XIV and XVI shall be dismissed with prejudice.

[4] 42 U.S.C. § 1983 provides in relevant part:
   Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress....

premised on a municipal policy or custom." *Id.* The Third Circuit described the two sources of liability as follows:

> Policy is made when a 'decisionmaker possess[ing] final authority to establish a municipal policy with respect to the action' issues an official proclamation, policy, or edict. A course of conduct is considered to be a 'custom' when, though not authorized by law, 'such practices of state officials [are] so permanently and well-settled' as to virtually constitute law.

*Id.* at 657-658(quoting *Andrews v. City of Philadelphia*, 895 F.2d 1469, 1480 (3d Cir. 1990)). Further, "[c]ustom requires proof of knowledge and acquiescence by the decisionmaker." *Id.* (citing *Watson v. Abington Twp.*, 478 F.3d 144, 154 (3d. Cir. 2007)). "Once a § 1983 plaintiff identifies a municipal policy or custom, he must 'demonstrate that, through its deliberate conduct, the municipality was the 'moving force' behind the injury alleged.'" *Berg v. Cnty. of Allegheny*, 219 F.3d 261, 276 (3d Cir. 2000)(quoting *Bd. of County Comm'rs of Bryan Cnty. v. Brown*, 520 U.S. 397, 404 (1997)). In other words, Plaintiff must allege a causal link between the policy or custom and the alleged constitutional deprivation. *Kranson v. Valley Crest Nursing Home,* 755 F.2d 46, 51 (3d Cir. 1985).

Defendants first argue that Plaintiff fails to sufficiently plead a *Monell* claim because she has failed to clearly identify a policy or a custom. Defs.' Br. 13. On the other hand, Plaintiff argues that the compliant sufficiently alleges that the Borough had a custom of violating its employees' rights. Pl.'s Br. 18. Plaintiff argues that she alleges that Costantino improperly instructed the PHPD to investigate her and during the investigation the Borough violated her constitutional rights through false criminal charges as well as through the practices and customs utilized by PHPD. *Id.*

Here, the Court agrees with Defendants in that Plaintiff has

failed to sufficiently allege facts to establish a *Monell* claim.
First, Plaintiff's Complaint does not specify a policy or custom
which caused a deprivation of her constitutional rights.  In this
regard, Plaintiff has not alleged that Pine Hill, or a
decisionmaker on behalf of Pine Hill, issued an official
proclamation, policy, or edict or that there was permanent and
well-settled custom.  "'To satisfy the pleading standard, [a
plaintiff] must identify a custom or policy and specify what
exactly that custom or policy was.'" *Lapella v. City of Atl. City*,
No. 10-2454, 2012 WL 2952411, at *6 (D.N.J. July 18, 2012)(citing
*McTernan*, 564 F.3d at 658).  In her brief, Plaintiff alleges that
her Complaint refers to "unconstitutional practices" such as Pine
Hill's "arrest policy," "conflict of interest policy," and its
custom of ignoring basic standard operating practices.  Pl.'s Br.
18.  In her Complaint, Plaintiff alleges:

- Winters failed to utilize the normal standard operating
  procedures. 2013 Compl. ¶ 29.

- Winters failed to follow proper protocol and standard
  operating procedures knowing that there was a potential
  conflict of interest.  2013 Compl. ¶ 30(c).

- Constantino had a duty to utilize proper procedure.  2013
  Compl. ¶ 30(f).

- "The actions of [Defendants] were undertaken . . . with
  knowledge that they were violating all standard operating
  procedures and policies in effect at that time, such as the
  "Arrest Policy," "Standing Operating Procedures" as well as
  the Conflict of Interest Policies."  2013 Compl. ¶ 45.

Because each of these allegations are conclusory in nature, the
Court need not credit same.  Even if the Court were to deem these
allegations factual, these allegations would only establish that
Costantino and/or Winters failed to follow Pine Hill's policies,

8

not that the policies were deficient, improper or caused the deprivation of Plaintiff's constitutional rights. *See Kranson,* 755 F.2d at 51 ("[T]he carelessness of an employee in failing to follow a policy or in misunderstanding its meaning may establish the negligence of the employee but does not fasten liability on the governmental agency."). Indeed, in Count I of the Complaint, Plaintiff fails to allege the constitutional right Defendants' violated.

The only other facts in support of a policy or custom alleged by Plaintiff, in her Complaint and even in her brief in opposition to the Motion, relate to actions taken against Plaintiff, however, actions taken against Plaintiff alone are insufficient to establish custom that can give rise to municipal liability. *See Murdock v. Borough of Edgewater*, No. 08-2268, 2011 WL 5320995, * 17 (D.N.J. Nov. 2, 2011). As such, on the facts alleged, Plaintiff fails to sufficiently plead a *Monell* claim. However, the Court will allow Plaintiff to attempt to cure these deficiencies by permitting Plaintiff to file a motion to amend the Complaint. *See Great Western Mining & Mineral Co. v. Fox Rothschild LLP*, 615 F.3d 159, 174 (3d Cir. 2010) ("[I]f a complaint is subject to a Rule 12(b)(6) dismissal, a district court must permit a curative amendment unless such an amendment would be inequitable or futile.").

With regard to Plaintiff's allegation of the failure to train, "a Plaintiff must (1) identify the deficiency in training; (2) prove that the deficiency caused the alleged constitutional violation; and (3) prove that the failure to remedy the deficiency constituted deliberate indifference on the part of the municipality." *Lapella v. City of Atl. City*, 2012 WL 2952411, at *7 (citing *Malignaggi v. County of Gloucester*, 855 F. Supp. 74, 77)(D.N.J. 1994)). There must be a causal link between the training deficiency and the alleged constitutional violation. *Id.*

9

"[I]n order for a municipality's failure to train or supervise to amount to deliberate indifference, it must be shown that (1) municipal policymakers know that employees will confront a particular situation; (2) the situation involves a difficult choice or a history of employees mishandling; and (3) the wrong choice by an employee will frequently cause deprivation of constitutional rights." *Carter v. City of Philadelphia*, 181 F.3d 339, 357 (3d Cir. 1999). "Generally, deliberate indifference can be shown only by demonstrating '[a] pattern of similar constitutional violations by untrained employees,' though a single incident can suffice in the rare case where the unconstitutional consequence of the failure to train is patently obvious." *Lapella*, 2012 WL 2952411, at *7 (citing *Connick v. Thompson*, 131 S. Ct. 1350, 1360 (2011)).

*Lapella* is instructive in this regard. In *Lapella*, the Court dismissed plaintiff's failure to train claim because plaintiff failed to allege: (1) specific shortcomings of the municipality's training programs regarding investigations, (2) how the deficiency caused the injury; (3) deliberate indifference on the part of the decisionmaker. *Id.* at *6-7. In this regard, plaintiff alleged that:

> Defendant Atlantic City had a duty to train and supervise its agents and employees for the benefit of the residents of, and visitors to, Atlantic City . . . On information and belief, Defendant Atlantic City had knowledge that [defendant officer] has a history of mistreating civilians and failed to implement effective measures to prevent his unlawful conduct . . . On information and belief, Defendant Atlantic City, as a matter of policy and practice, failed to properly train and supervise its officers to abide by the law and to respect the rights of the people they encounter, including Plaintiff, and thereby encouraged [defendant officer] in this case to engage in the unlawful and actionable conduct described above . . . That negligence on the part of Atlantic City caused Plaintiff to suffer injuries at the hands of its untrained, uncontrolled and unsupervised agents and

employees.

*Id.* at *7-8.  The court in *Lapella* found that plaintiff failed to establish a specific shortcoming in defendant Atlantic City's programs, as the complaint contained only conclusory allegations regarding Atlantic City's failure to train.  *Id.* at * 8.  Further, the court found that plaintiff did not plausibly allege how the deficiency caused her injury because there was insufficient factual support that insufficient training encouraged the defendant officer to engage in unlawful conduct.  *Id.*  Last, the court found that, while plaintiff alleged that Atlantic City knew that defendant officer had a history of mistreating civilians, plaintiff failed to allege facts that the resulting outcome was a result of the policy as opposed to the officer's individual shortcomings.  *Id.*  Further, the court indicated that plaintiff failed to allege that defendant officer's alleged conduct was bound to happen and the police department ignored said risk.  *Id.*

Similarly here, Plaintiff fails to sufficiently plead a claim for failure to train.  First and foremost, in Count V, the Court assumes that Plaintiff's failure to train claim is based upon the investigation performed by Winters.[5]  Indeed, similar to Count I, Plaintiff does not allege which constitutional amendment has been violated.  In any event, Plaintiff alleges that the criminal investigation was initiated against her despite the absence of evidence that she was engaged in criminal activity.  Plaintiff also alleges that during a meeting with Winters, he intimidated her with threats and forced her into an uncomfortable situation. Plaintiff further attacks the investigation alleging that Winters did not tell her she was being investigated nor was she read her Miranda rights during the meeting.  Plaintiff also sets forth

---

[5] The shear fact that the Court must assume is proof positive that Plaintiff's pleading is simply insufficient to a state a claim.

several conclusory allegations regarding Winters failure to follow proper policies and procedures.

These facts do not plausibly state a failure to train claim. First, Plaintiff's Complaint does not allege any facts sufficient to establish the specific shortcomings of Pine Hill's training programs regarding investigations. Moreover, because the Complaint does not contain allegations establishing the specific shortcomings of Pine Hill's training programs, as a corollary, same could not, and does not, plead facts regarding how the deficiency caused her injury. Indeed, as noted above, Count V fails to allege a specific constitutional violation. Last, Plaintiff fails to allege deliberate indifference on the part of the decisionmaker because the Complaint is devoid of any facts alleging "[a] pattern of similar constitutional violations by untrained employees." *Lapella*, 2012 WL 2952411, at *7. As such, Plaintiff fails to set forth facts which state a claim for failure to train. However, here to, the Court will permit Plaintiff to cure any deficiencies via a motion to amend.[6]

## ii.   Counts II & III for Malicious Prosecution Against Defendants Winter and Costantino

With regard to Counts II and III, there appears to be some confusion as to the claims Plaintiff is attempting to plead. Defendants characterized Counts II and III as *Monell* claims.[7] In response, Plaintiff argues that Defendants "mischaracterized" her claim because she was attempting to plead a malicious prosecution claim. Notably, while the term "maliciously" appears in Counts II and III, the terms "malicious" or "prosecution" are absent.

---

[6] Based on the foregoing, the Court will not address Defendants' statute of limitations argument at this juncture.

[7] Primarily because Counts II and III are titled "Violations of 42 U.S.C. § 1983" and Count I, a *Monell* claim, bears the same title. Further, Counts I, II and III contain similar language providing that Defendants have engaged in, developed and maintained a number of deficient policies and/or customs which caused the deprivation of Plaintiff's constitutional rights.

12

Additionally, Counts II and III allege violations of Plaintiff's Fourth, Eight and Fourteenth Amendment rights. However, in her brief, Plaintiff references her Fourth Amendment rights. Notwithstanding the foregoing, the Court will nonetheless construe Counts II and III as claims for malicious prosecution.[8]  However, the Court finds that the Complaint fails to sufficiently state a claim for malicious prosecution, thus, same is dismissed with the right to cure via a motion to amend.

To prevail on a malicious prosecution claim under section 1983, a plaintiff must show that: (1) the defendants initiated a criminal proceeding; (2) the criminal proceeding ended in the plaintiff's favor; (3) the proceeding was initiated without probable cause; (4) the defendants acted maliciously or for a purpose other than bringing the plaintiff to justice; and (5) the plaintiff suffered deprivation of liberty consistent with the concept of seizure as a consequence of a legal proceeding. *McKenna v. City of Philadelphia*, 582 F.3d 447, 461 (3d Cir. 2009). The only apparent issue here is whether Plaintiff has adequately pled probable cause. "Probable cause is defined as 'reasonable grounds for suspicion supported by circumstances sufficiently strong in themselves to warrant an ordinarily cautious [person] in the belief that the accused is guilty of the offense with which he is charged.'" *Land v. Helmer,* 843 F. Supp. 2d 547, 550 (D.N.J. 2012).

---

[8] In its reply brief, Defendants argue that Plaintiff is collaterally estopped from arguing that Defendants lacked probable cause to arrest her because an administrative law judge has rendered findings of facts and conclusions of law on this issue, which have been affirmed by the New Jersey Local Finance Board. Toward this end, Defendants cite Exhibit A of its counsel's certification as establishing the facts which would preclude Plaintiff from arguing that Defendants did not have probable cause for the arrest. However, Exhibit A of counsel's certification is the 2013 Complaint at issue herein. Moreover, the Court was unable to ascertain any other document affixed to Defendants' counsel's certification referencing said facts. As such, the Court has not considered Defendants' argument. However, the Court will not preclude Defendants from reinstating this argument at a later time.

There are two allegations relevant to the issue of probable cause. First, Plaintiff alleges that Defendants' actions constituted a de facto termination and the illegal police investigation of Plaintiff was without probable cause.  This is conclusory and thus the Court need not credit same.  Plaintiff also alleges:

> despite having no standing to criminally investigate [Plaintiff] with respect to her status as a certified municipal tax collector, [Defendants] manufactured criminal charges against [Plaintiff] based on an unsubstantiated conclusion that she lied on employment documents about completing state-promulgated continuing education credits, such credits being a prequisite to continuing state accreditation as a certified municipal tax collector.

2013 Compl., ¶ 32.  This is also a conclusory allegation primarily because Plaintiff does not allege facts establishing the lack of "standing" or how this was an "unsubstantiated conclusion" on the part of Defendants.  Indeed, Plaintiff fails to even set forth facts that would lead to the conclusion that the investigation was improper because there were no issues with her employment documents.  Moreover, Plaintiff baldly states that the charges were manufactured but does not allege what the charges were or how same were "manufactured."  While Plaintiff alleges that her municipal tax collector certification is, and has remained, current, this begs the question of whether or not she misrepresented her credentials on an employment document in violation of the law.  There are no allegations relating to same.  As such, Plaintiff fails to sufficiently allege facts to permit an inference that the proceeding was initiated without probable cause.  As noted above, Plaintiff is granted leave to correct said deficiency by way of motion to amend the Complaint.

### iii. Count IX, X, XI: Violation of New Jersey Civil Rights Act N.J.S.A. 10:6-2 against Defendant Pine Hill, Costantino & Winters

The New Jersey Civil Rights Act ("CRA") provides a private cause

of action to a person who

> has been deprived of any substantive due process or
> equal protection rights, privileges or immunities
> secured by the Constitution or laws of the United
> States, or any substantive rights, privileges or
> immunities secured by the Constitution or laws of this
> State, or whose exercise or enjoyment of those
> substantive rights, privileges or immunities has been
> interfered with or attempted to be interfered with, by
> threats, intimidation or coercion by a person acting
> under color of law.

N.J.S.A. 10:6-2(c).

In her Complaint, Plaintiff alleges that Defendants violated her due process and equal protection rights in violation of the Fourteenth Amendment and the New Jersey Constitution. Defendants argue that said claims are barred by the applicable statute of limitations--two years--as such, same should be dismissed. In response, Plaintiff then argues in her brief that her claims are not barred because Defendants violated her "Fourth Amendment" rights and, further, her CRA claims are "rooted in malicious prosecution." Plaintiff also argues that she has brought a proper procedural due process claim based upon the fact that Winters and Costantino abused the criminal process.

Although Plaintiff's brief references the Fourth Amendment, Counts IX, X and XI only reference the Fourteenth Amendment-not the Fourth Amendment. Thus, these counts of the Complaint do not allege, and have not placed Defendants on notice of, a claim for violation of Plaintiff's Fourth Amendment rights. Further, to the extent that Plaintiff claims that the foregoing counts set forth a claim for either abuse of process or malicious prosecution as well, although same is certainly not apparent from the pleading, for the reasons expressed in connection with the Court's § 1983 analysis with regard to the malicious prosecution claims, Plaintiff fails to plead sufficient facts to state a claim for

same and will be permitted leave to file a motion to amend. *See Hottenstein v. City of Sea Isle City*, 977 F. Supp. 2d 353, 365 (D.N.J. 2013)("This district has repeatedly interpreted NJCRA analogously to § 1983.").

**iv. Count XVII: Civil Conspiracy pursuant to 42 U.S.C. § 1983 against all Defendants**

Here again, Defendants, as argued by Plaintiff, mischaracterized this count as a conspiracy claim pursuant to New Jersey law. Plaintiff argues, in her brief, that it is a civil conspiracy claim pursuant to 42 U.S.C. § 1985.

To state a claim for civil conspiracy pursuant to § 1985, plaintiff must allege "that defendants, motivated by a class-based invidiously discriminatory animus, conspired to deprive plaintiff of the equal protection rights of the laws or of equal privileges and immunities under the laws and that plaintiff was thereby injured." *Bougher v. Univ. of Pittsburgh*, 882 F.2d 74, 79 (3d Cir. 1989).

Here, Plaintiff fails to assert any facts from which any type of conspiratorial agreement between the Defendants can be inferred. Plaintiff alleges that Defendant Costantino instructed Winters to open a criminal investigation into Plaintiff and that Defendant Winters knew or should have known that Defendant Costantino had a personal vendetta against Plaintiff. Compl. ¶¶ 27, 30(f). Further, Plaintiff alleges that the Defendants manufactured false charges and claims against her. Compl. ¶ 32. Plaintiff alleges that the Defendants "conspired" in retaliation for her complaints about unlawful and/or fraudulent conduct by Defendant Costantino. Other than baldly claiming that Defendants "conspired", there are no facts to support a finding that the Defendants reached an agreement and/or had the requisite "meeting of the minds" to form a conspiracy. *Livingston v. Borough of Edgewood*, 430 Fed. Appx. 172, 178-9 (3d Cir. 2011). Furthermore,

16

Plaintiff specifically alleges that the "conspiracy" was in retaliation for her complaints about unlawful and/or fraudulent conduct by Defendant Costantino, as opposed to being "motivated by a class-based invidiously discriminatory animus" as required to state a § 1985(3) civil conspiracy claim. Therefore, the alleged facts are insufficient to state a § 1985(3) claim.

**v. Entire Controversy Doctrine**

Finally, Defendants allege that Plaintiff's Complaint should be dismissed pursuant to the entire controversy doctrine because each count of the Complaint arises from the same facts and history set forth in Plaintiff's 2010 Complaint. However, because there has been no prior state judgment, the entire controversy is not applicable in this case. "Under the entire controversy doctrine, a party cannot withhold part of a controversy for separate later litigation even when the withheld component is a separate and independently cognizable cause of action." *Paramount Aviation Corp. v. Agusta*, 178 F.3d 132, 137 (3d Cir. 1999). In *Paramount Aviation*, the Third Circuit held "that the entire controversy doctrine is not the right preclusion doctrine for a federal court to apply when prior judgments were not entered by the courts of New Jersey." *Id.* at 138. Here, the 2010 Complaint was removed to this Court and, subsequently, Judge Irenas has granted, at least in part, a motion to dismiss and a motion for summary judgment. Thus, the entire controversy doctrine does not preclude the 2013 Complaint because said doctrine does not apply to the 2010 Complaint in that it was not the subject of a prior judgment entered by a court in New Jersey.

**III. Conclusion**

In conclusion, Defendants' Motion to Dismiss is granted with regard to Counts IV, VI, VII, VIII, XII, XIII, XIV, XV and XVI, thus, these claims shall be dismissed with prejudice. Further, Counts I, II, III, V, IX, X, XI, XVII, and XVIII are dismissed

17

without prejudice.[9]   Plaintiff is hereby granted leave to file a motion seeking to amend these claims.   However, the Court must provide some guidance in this regard.   The purpose of Federal Rule of Civil Procedure 8 is to provide notice of the grounds for entitlement to relief.   Here, Plaintiff's Complaint fails woefully in this regard as there were many claims wherein Defendants construed them in one manner and then Plaintiff, by way of her brief no less, indicated that Defendants improperly construed same.   As a corollary, it is fair to say that Defendants did not have adequate notice of Plaintiff's claims.   It is this Court's function to ensure that any civil action pending before it proceed in a just and speedy manner.   Thus, in the interest of justice and to ensure Defendants have proper notice of Plaintiff's claims, if Plaintiff opts to file a motion seeking to amend the Complaint, the proposed complaint attached thereto shall comply with the following dictates: 1) the fact section of the complaint shall be limited to facts; 2) each count of the complaint shall clearly identify both the claim and the defendant for which the claim is brought; and 3) each count shall clearly identify the constitutional amendment upon which Plaintiff relies or alleges was violated.   Moreover, to the extent that Plaintiff has previously tried to defeat the instant Motion to Dismiss by clarifying her claims, and the facts in support of same, in her brief, the Court strongly urges Plaintiff to set forth the relevant facts relied on in each count of the proposed complaint.

       An appropriate order will be issued.


**Date: June 30, 2014**                    s/ Karen M. Williams
                                           KAREN M. WILLIAMS
                                           UNITED STATES MAGISTRATE JUDGE

---

[9] Because every count has been dismissed, there is no basis for Court XVIII which seeks punitive damages.   Therefore, it is also dismissed without prejudice.